IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


MARK A. REEVES,                          3:11-CV-01278-BR

        Plaintiff,

                                         OPINION AND ORDER
v.

RECONTRUST COMPANY, N.A.;
BANK OF AMERICA, N.A.,
successor by merger to BAC
HOME LOAN SERVICING, LP fka
COUNTRYWIDE HOME LOANS
SERVICING; FEDERAL NATIONAL
MORTGAGE ASSOCIATION; and
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,

        Defendants.


JOHN P. BOWLES
5200 S.W. Meadows Road
Suite 150
Lake Oswego, OR 97035
(503) 724-3149

        Attorney for Plaintiff


1 - OPINION AND ORDER

**GREGORY A. CHAIMOV**
**P. ANDREW MCSTAY , JR.**
Davis Wright Tremaine, LLP
1300 S.W. Fifth Avenue
Suite 2300
Portland, OR 97201-5630
(503) 778-5328

        Attorneys for Defendants

**BROWN, Judge.**

        This matter comes before the Court on Defendants' Motion

(#5) to Dismiss.  For the reasons that follow, the Court **GRANTS**

Defendants' Motion.


                        <u>**BACKGROUND**</u>

        The following facts are taken from Plaintiff's Complaint and

the documents as to which the Court has taken judicial notice

pursuant to Defendants' request:

        On August 15, 2007, Plaintiff Mark A. Reeves entered

into a Note and Deed of Trust with Mortgage Express, LLC, secured

by property located at 2747 Lafave Street, West Linn, Oregon.

The Trust Deed listed Plaintiff as grantor; Mortgage Express,

LLC, as lender; Fidelity National Title Company as Trustee; and

Defendant Mortgage Electronic Registration System (MERS) "solely

as nominee for Lender and Lender's successors and assigns" and as

the beneficiary of the Note.  Notice of Removal, Ex. A at 36-37.

        The Trust Deed was recorded in Clackamas County, Oregon, on

August 22, 2007.

2 - OPINION AND ORDER

On January 13, 2010, MERS entered into an Assignment of Deed of Trust in which it

> grant[ed], convey[ed], assign[ed], and
> transfer[red] to BAC HOME LOANS SERVICING, LP FKA
> COUNTRYWIDE HOME LOANS SERVICING LP . . . all
> beneficial interest under [the August 19, 2007,
> Trust Deed]. . . .  Together with note or notes
> therein described or referred to, the money due
> and to become due thereon, with interest, and all
> rights accrued or to accrue under said Deed of
> Trust.

Notice of Removal, Ex. A at 52.  The Assignment of Deed of Trust was recorded in Clackamas County on January 13, 2010.

On January 13, 2010, BAC Home Loan Servicing[1] also executed an Appointment of Successor Trustee in which it appointed Defendant ReconTrust Company "as successor Trustee under [the Trust Deed at issue], to have all the powers of said original trustee." Notice of Removal, Ex. A at 49.  The Appointment of Successor Trustee likewise was recorded in Clackamas County on January 13, 2010.

Finally, ReconTrust recorded a Notice of Default and Election to Sell Plaintiff's property in Clackamas County on January 13, 2010.  The Notice of Default reflected, among other things, Plaintiff's failure to make any monthly mortgage payments beginning October 1, 2009, and ReconTrust's intent to conduct a foreclosure sale of the property on May 24, 2010.

---

[1] Defendant Bank of America, N.A. (BOA) is the successor by merger to BAC Home Loan Servicing, LP.

3 - OPINION AND ORDER

The foreclosure sale did not occur on May 24, 2010.[2]

On May 28, 2010, ReconTrust recorded a Rescission of Notice of Default, which provided in pertinent part:

> A notice of grantor's default under [the Trust Deed at issue] . . . was recorded on 01/13/2010 . . .: thereafter by reason of the default being cured as permitted by the provision of Section 86.753, Oregon Revised Statutes, the default described in said notice of default has been removed, paid, and overcome so that said Trust Deed should be reinstated.
>
> Now therefore, notice is hereby given that the undersigned Trustee does hereby rescind, cancel, and withdraw said notice of default and election to sell; said Trust Deed and all obligations secured thereby hereby are reinstated and shall be and remain in force and effect the same as if no acceleration had occurred and as if said notice of default had not been given; it being understood, however, that this rescission shall not be construed as waiving or affecting any breach or default (past, present or future) under said Trust Deed or as impairing any right or remedy thereunder, or as modifying or altering in any respect of the terms, covenants, conditions or obligations thereof, but is and shall be deemed to be only an election without prejudice, not to cause a Sale to be made pursuant to said notice so recorded.

Notice of Removal, Ex. A at 54.

On November 10, 2010, MERS entered into an Assignment of Deed of Trust in which it

> grant[ed], convey[ed], assign[ed], and transfer[red] to BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP . . . all beneficial interest under [the August 19, 2007,

---

[2] The record does not reflect why the foreclosure sale did not occur.

4 - OPINION AND ORDER

> Trust Deed]. . . .  Together with note or notes
> therein described or referred to, the money due
> and to become due thereon, with interest, and all
> rights accrued or to accrue under said Deed of
> Trust.

Notice of Removal, Ex. A at 53.  The Assignment of Deed of Trust
was recorded in Clackamas County on November 10, 2010.

Also on November 10, 2010, BAC Home Loan Servicing entered
into an Appointment of Successor Trustee in which it appointed
Defendant ReconTrust Company "as successor Trustee under [the
Trust Deed at issue], to have all the powers of said original
trustee."  Notice of Removal, Ex. A at 50.  The Appointment of
Successor Trustee likewise was recorded in Clackamas County on
November 10, 2010.

Finally, ReconTrust recorded a Notice of Default and
Election to Sell Plaintiff's property in the real-property
records of Clackamas County, Oregon, on November 10, 2010.  The
Notice of Default reflected, among other things, Plaintiff's
failure to make any monthly mortgage payments beginning
October 1, 2007, and ReconTrust's intent to conduct a foreclosure
sale on March 21, 2011.

Although the foreclosure sale did not occur on March 21,
2011,[3] ReconTrust recorded a Notice of Default and Election to
Sell Plaintiff's property in the real-property records of

---

[3] The record does not reflect why the foreclosure sale did
not occur.

5 - OPINION AND ORDER

Clackamas County, Oregon on April 8, 2011.  The Notice of Default reflected, among other things, Plaintiff's failure to make any monthly mortgage payments beginning July 1, 2010, and ReconTrust's intent to conduct a foreclosure sale on August 17, 2011.

On September 11, 2011, Plaintiff filed a Complaint in Clackamas County Circuit Court bringing claims against ReconTrust, BOA, Federal National Mortgage Association (Fannie Mae), and MERS for (1) wrongful foreclosure, (2) "fraud and intentional misrepresentation," and (3) intentional infliction of emotional distress.  Plaintiff seeks damages, injunctive relief, and declaratory relief.

On September 22, 2010, the Clackamas County Circuit Court granted Plaintiff's request for a temporary restraining order and restrained the foreclosure sale of Plaintiff's home.

On September 27, 2010, Plaintiff served Defendants with his complaint.

On October 24, 2010, Defendants timely removed the matter to this Court on the basis of diversity jurisdiction.

Defendants move to dismiss Plaintiff's Complaint in its entirety.

### STANDARDS

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

6 - OPINION AND ORDER

> "state a claim to relief that is plausible on its
> face." [*Bell Atlantic v. Twombly*, 550 U.S. 554,] 570,
> 127 S. Ct. 1955. A claim has facial plausibility when
> the plaintiff pleads factual content that allows the
> court to draw the reasonable inference that the
> defendant is liable for the misconduct alleged. *Id.* at
> 556. . . . The plausibility standard is not akin to a
> "probability requirement," but it asks for more than a
> sheer possibility that a defendant has acted
> unlawfully. *Ibid.* Where a complaint pleads facts that
> are "merely consistent with" a defendant's liability,
> it "stops short of the line between possibility and
> plausibility of 'entitlement to relief.'" *Id.* at 557,
> 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). *See also Bell*

*Atlantic v. Twombly*, 550 U.S. 554, 555-56 (2007). In deciding a

Rule 12(b)(6) motion, the court must accept as true the

allegations in the complaint and construe them in favor of the

plaintiff. *Intri-Plex Tech., Inc. v. Crest Group, Inc.*, 499 F.3d

1048, 1050 n.2 (9th Cir. 2007). "The court need not accept as

true, however, allegations that contradict facts that may be

judicially noticed by the court." *Shwarz v. United States*, 234

F.3d 428, 435 (9th Cir. 2000)(citations omitted).

In addition, when "ruling on a 12(b)(6) motion, a court may

generally consider only allegations contained in the pleadings,

exhibits attached to the complaint, and matters properly subject

to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th

Cir. 2007)(citing *Jacobson v. Schwarzenegger,* 357 F. Supp. 2d

1198, 1204 (C.D. Cal. 2004)). A court, however, "may consider a

writing referenced in a complaint but not explicitly incorporated

therein if the complaint relies on the document and its

7 - OPINION AND ORDER

authenticity is unquestioned." *Id.* (quoting *Parrino v. FHP,
Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on
other grounds as stated in Abrego v. Dow Chem. Co.*, 443 F.3d 676
(9th Cir. 2006)).  Similarly, the court's reliance on judicially-
noticed documents does not convert a motion to dismiss into a
summary-judgment motion.  *Intri-Plex*, 499 F.3d at 1052.


## DISCUSSION

As noted, Defendants move to dismiss Plaintiff's Complaint
in its entirety.

## I.   Wrongful foreclosure

Plaintiff's first seven claims allege wrongful foreclosure
on the grounds of (1) failure of agency against BOA and MERS,
(2) lack of standing against BOA and ReconTrust, (3) unrecorded
assignments against all Defendants, (4) invalid successor trustee
against ReconTrust, (5) defective notice of default and election
to sell against ReconTrust, (6) failure of consideration against
MERS, and (7) lack of standing "and additional violations of ORS
86.735(1)" against undesignated Defendants.

### A.   MERS generally

As the Ninth Circuit explained in *Cervantes v.
Countrywide Home Loans, Inc.*,

> MERS is a private electronic database, operated by
> MERSCORP, Inc., that tracks the transfer of the
> "beneficial interest" in home loans, as well as

8 - OPINION AND ORDER

any changes in loan servicers. After a borrower takes out a home loan, the original lender may sell all or a portion of its beneficial interest in the loan and change loan servicers. The owner of the beneficial interest is entitled to repayment of the loan. For simplicity, we will refer to the owner of the beneficial interest as the "lender." The servicer of the loan collects payments from the borrower, sends payments to the lender, and handles administrative aspects of the loan. Many of the companies that participate in the mortgage industry . . . are members of MERS and pay a fee to use the tracking system. *See Jackson v. Mortg. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 490 (Minn. 2009).

When a borrower takes out a home loan, the borrower executes two documents in favor of the lender: (1) a promissory note to repay the loan, and (2) a deed of trust, or mortgage, that transfers legal title in the property as collateral to secure the loan in the event of default. State laws require the lender to record the deed in the county in which the property is located. Any subsequent sale or assignment of the deed must be recorded in the county records, as well.

This recording process became cumbersome to the mortgage industry, particularly as the trading of loans increased. *See* Robert E. Dordan, *Mortgage Electronic Registration Systems (MERS), Its Recent Legal Battles, and the Chance for a Peaceful Existence*, 12 Loy. J. Pub. Int. L. 177, 178 (2010). It has become common for original lenders to bundle the beneficial interest in individual loans and sell them to investors as mortgage-backed securities, which may themselves be traded. *See id.* at 180; *Jackson*, 770 N.W.2d at 490. MERS was designed to avoid the need to record multiple transfers of the deed by serving as the nominal record holder of the deed on behalf of the original lender and any subsequent lender. *Jackson*, 770 N.W.2d at 490.

At the origination of the loan, MERS is designated in the deed of trust as a nominee for the lender and the lender's "successors and assigns," and as

> the deed's "beneficiary" which holds legal title
> to the security interest conveyed.  If the lender
> sells or assigns the beneficial interest in the
> loan to another MERS member, the change is
> recorded only in the MERS database, not in county
> records, because MERS continues to hold the deed
> on the new lender's behalf.  If the beneficial
> interest in the loan is sold to a non-MERS member,
> the transfer of the deed from MERS to the new
> lender is recorded in county records and the loan
> is no longer tracked in the MERS system.

656 F.3d 1034, 1038-39 (9th Cir. 2011).

**B.   Plaintiff's First Claim:   Failure of Agency**

In his First Claim for wrongful foreclosure based on
failure of agency, Plaintiff alleges in pertinent part:

> MERS could not act as nominee/agent for a
> principal to effect an assignment because the
> principal for whom MERS purported to act as
> "beneficiary" did not hold Plaintiffs [*sic*] loan
> on that date.  Consequently, the DOT [Deed of
> Trust] was severed from the Note at the time of
> the purported assignment and the ADOT [Assignment
> of Deed of Trust] was legally meaningless and
> could convey nothing.
>
> There is nothing in the DOT that confers on MERS
> the power to assign security interests.  Such a
> power is outside the scope of a nominee, whose
> self-described role is to act as a limited agent
> on the Original Lender's behalf.  No provision
> found anywhere within the DOT provides any basis
> for asserting that MERS has the power to assign
> security interests.  To the contrary, the only
> reference within the DOT to any powers that MERS
> may have is through an explicitly conditional
> grant, which limits the exercise of such powers by
> the phrase, "if necessary to comply with law or
> custom."  Plaintiff asserts that nothing in either
> Oregon law or custom makes it "necessary" for MERS
> to effect such assignments.  Such transactions
> have occurred for many years in Oregon without
> incident and no law or custom has made or makes it
> necessary now to conduct them by means of an agent

> such as MERS.  Indeed, the only way this
> conditional grant of authority to MERS could
> possibly make it "necessary" for MERS to effect
> such assignments is if MERS were the Beneficiary,
> a scenario in which only MERS, but not the Lender
> would have the power to effect such an assignment.
> Given MERS' passive nature as a member –
> administered electronic database designed to
> enable its members to track loans, it is
> inconsistent with such a limited role to assume
> that its powers, without more, would include the
> assignment of security instruments associated with
> those loans.

Compl. at ¶¶ 24-25.  In summary, Plaintiff alleges MERS is not a

proper beneficiary of the Deed of Trust under Oregon law, and,

therefore, MERS could not legally transfer the Trust Deed as a

matter of law.

Defendants contend MERS meets the statutory definition

of a beneficiary and was explicitly appointed to that role by the

parties to the Trust Deed, and, therefore, MERS could and did

legally transfer the Trust Deed.

To the extent that Plaintiff contends MERS was not a

proper beneficiary under the Trust Deed because the Note was

effectively "split" from the Trust Deed, the Ninth Circuit

specifically rejected that theory as a basis for finding wrongful

foreclosure under Arizona law.  In *Cervantes* the Ninth Circuit

noted:

> Even if we were to accept the plaintiffs' premises
> that MERS is a sham beneficiary and the note is
> split from the deed, we would reject the
> plaintiffs' conclusion that, as a necessary
> consequence, no party has the power to foreclose.
> The legality of MERS's role as a beneficiary may

be at issue where MERS initiates foreclosure in
its own name, or where the plaintiffs allege a
violation of state recording and foreclosure
statutes based on the designation. *See, e.g.,
Mortgage Elec. Registration Sys. v. Saunders*, 2
A.3d 289, 294-97 (Me. 2010)(concluding that MERS
cannot foreclose because it does not have an
independent interest in the loan because it
functions solely as a nominee); *Landmark Nat'l
Bank*, 216 P.3d at 165-69 (same); *Hooker v.
Northwest Tr. Servs.*, No. 10-3111, 2011 WL
2119103, at *4 (D. Or. May 25, 2011)(concluding
that the defendants' failure to register all
assignments of the deed of trust violated the
Oregon recording laws so as to prevent
non-judicial foreclosure). *But see Jackson*, 770
N.W.2d at 501 (concluding that defendants' failure
to register assignments of the beneficial interest
in the mortgage loan did not violate Minnesota
recording laws so as to prevent non-judicial
foreclosure). This case does not present either
of these circumstances and, thus, we do not
consider them.

Here, MERS did not initiate foreclosure: the
trustees initiated foreclosure in the name of the
lenders. Even if MERS were a sham beneficiary,
the lenders would still be entitled to repayment
of the loans and would be the proper parties to
initiate foreclosure after the plaintiffs
defaulted on their loans.

656 F.3d at 1044.

To the extent that Plaintiff contends the obligation

(*i.e.,* payment of the Note) is owed to the lender rather than to

MERS, and, therefore, only the lender may be the beneficiary, the

Court disagrees. Under Oregon law "[b]eneficiary means the

person named or otherwise designated in a trust deed as the

person for whose benefit a trust deed is given." Or. Rev. Stat.

§ 86.705. The Trust Deed here names MERS as the beneficiary;

12 - OPINION AND ORDER

*i.e.*, the person for whose benefit the Trust Deed is given.

Although Oregon statute does not define "benefit" in the context

of a beneficiary, Oregon Revised Statute § 86.705(5) defines

"trust deed" as "a deed . . . conveying an interest in real

property . . . to secure the performance of an obligation owed by

the grantor or other person named in the deed to a beneficiary."

Accordingly, the obligation the Trust Deed secures is payment of

the Note.  In this instance, moreover, the Trust Deed provides in

pertinent part:

> Borrower understands and agrees that MERS holds
> only legal title to the interests granted by
> Borrower in this Security Instrument, but, if
> necessary to comply with law or custom, MERS (as
> nominee for Lender and Lender's successors and
> assigns) has the right: to exercise any or all of
> those interests, including, but not limited to,
> the right to foreclose and sell the Property; and
> to take any action required of Lender including,
> but not limited to releasing and cancelling this
> Security Instrument.

Notice of Removal, Ex. A at 38.  Thus, pursuant to that

provision, MERS has the right to receive payment of the

obligation, and, therefore, to be the beneficiary if two

requirements are met:  (1) it is necessary to comply with law or

custom and (2) the statutes and trust deed do not otherwise

prevent MERS from being a beneficiary.

As noted, Plaintiff alleges there is not any "law or

custom" that requires MERS to be a beneficiary, and, therefore,

the clause does not apply and MERS may not be the beneficiary.

13 – OPINION AND ORDER

Judge Michael W. Mosman recently rejected this argument in *Beyer v. Bank of America*, 800 F. Supp. 2d. 1157 (D. Or. 2011). Judge Mosman reasoned

> the trust deed repeatedly calls MERS the beneficiary, a statement which would not comply with law or custom unless MERS's powers were expanded to include the right to receive payment of the obligation. For this reason, I find the clause is triggered, and MERS has the right to receive payment of the obligation.

*Id.* at 1161. Judge Mosman further reasoned:

> This interpretation is consistent with Oregon law and the text of the trust deed. [The plaintiffs] suggest that because MERS is called a "nominee" for the lender it cannot also be the beneficiary. See Trust Deed *1162 [62-1] 1, 4. They do not explain why a beneficiary in one context cannot be a nominee in another. More importantly, at least one Oregon court has rejected this argument. *Somers*, No. CV11020133, slip op. at 4 ("That MERS and its successors, as the named beneficiary, is the nominee of the Lender and its successors is not contrary to Oregon law and is consistent with the express terms of the Deed of Trust made and delivered by the Somers.").

> This interpretation is also consistent with Oregon public policy because it makes no change to the rights or obligations of [the Plaintiffs]; it only changes the party to whom these obligations are owed. The most [the Plaintiffs] can show is that this creates a complex payment arrangement for receiving the benefit of the obligation between MERS and the lenders' successors, but this creates no practical harm for [the Plaintiffs]. Perhaps most importantly, this interpretation best carries out the intent of the parties, who clearly intended for MERS to be the beneficiary and for the note to be liquid. Trust Deed [62-1] 2-10 ("[MERS] is the Grantee of this Security Instrument. . . . MERS is the beneficiary under this Security Instrument. . . . The beneficiary of this Security Instrument is MERS. . . . The

14 – OPINION AND ORDER

Note or a partial interest in the Note (together
with this Security Instrument) can be sold one or
more times without prior notice to Borrower.").
Because the trust deed grants MERS all powers
necessary to be a beneficiary, and because that
grant is consistent with the trust deed, Oregon
statutes and policy, and the intent of the
parties, I find that MERS was properly designated
to receive the benefit under the trust deed.

Because the trust deed names MERS as the
beneficiary and MERS has the right to receive the
benefit of the trust deed, I find that MERS was a
proper beneficiary under the trust deed.

*Id.* at 1161-62.

The Court finds persuasive Judge Mosman's reasoning and
analysis and applies it here where the Trust Deed also repeatedly
indicates MERS is the beneficiary.  The Court concludes the
designation of MERS as the beneficiary does not change
Plaintiff's obligations under the Trust Deed or the Note and best
carries out the intention of the parties as expressed in the
Trust Deed.  *See also Richard v. Deutsche Bank Nat'l Trust Co.,*
No. 09-CV-123-AC, 2011 WL 2650735, at *3 (D. Or. Jul. 6, 2011)
("Because the trust deed in the present case explicitly names
MERS as a beneficiary and specifically gives it the right to
foreclose on Plaintiff's property, I find no error in the
Magistrate Judge's findings [that the deed of trust authorized
MERS to act as a beneficiary]."); *Bertrand v. SunTrust Mortg.,
Inc.,* No. 09-CV-857-JO, 2011 WL 1113421, at *4 (D. Or. Mar. 23,
2011)(language in the Trust Deed identical to that at issue here
was sufficient to make MERS a proper beneficiary under the Trust

15 - OPINION AND ORDER

Deed).

Accordingly, Court concludes MERS is a proper beneficiary under the Trust Deed, and, therefore, MERS could legally transfer the Trust Deed as a matter of law. As a result, the Court grants Defendants' Motion to Dismiss Plaintiff's First Claim for wrongful foreclosure based on failure of agency.

### C.   Plaintiff's Second Claim:   Lack of Standing

In his Second Claim for wrongful foreclosure based on lack of standing, Plaintiff alleges

> the real party in interest is not BOA, even though it is the party conducting the non-judicial foreclosure, because BOA is not the owner of Plaintiffs [*sic*] loan. Rather, BOA is nothing more than the servicer of Plaintiffs loan, as confirmed by MERS' [*sic*] own database. See "Exhibit 8." Thus, BAC [*sic*] has no standing, whether constitutional or prudential, to proceed with this non-judicial foreclosure because it is merely the servicer, though falsely purporting to be the present beneficiary.

Compl. at ¶ 30.

The record reflects MERS assigned "all beneficial interest" in the Trust Deed to BOA and thereby transferred all of the power to secure the performance of the loan obligation to BOA, including the power to engage in a nonjudicial fore-closure. There is not anything in Oregon law that "require[s] presentment of the note or other proof of 'real party in interest' or 'standing,' other than the deed of trust, to proceed with a non-judicial foreclosure." *Delorean v. First Horizon Home Loans*,

16 - OPINION AND ORDER

No. 10-CV-3021-CL, 2011 WL 4404148, at *3 (D. Or. June 7, 2011),
*adopted by order*, 2011 WL 4404143 (D. Or. Sep. 21, 2011) (citing
*Stewart v. Mortg. Elec. Registration Sys., Inc.*, No. CV.
09-687-PK, 2010 WL 1055131, at *12 (D. Or. Feb. 9, 2010), *adopted
by order*, 2010 WL 1054775 (D. Or. Mar. 19, 2010); *McDaniel v. BAC
Home Loans Servicing, LP*, No. 10-6143-HO, 2011 WL 1261387, at *3
(D. Or. Mar. 31, 2011); *Tabb v. One West Bank (Indymac)*,
No. CV-10-855-ST, 2010 WL 5684402, at *5 (D. Or. Nov. 1, 2010),
*adopted by order*, 2011 WL 344593 (D. Or. Jan. 31, 2011)).

Accordingly, the Court grants Defendant's Motion to
Dismiss Plaintiff's Second Claim for wrongful foreclosure on the
basis of lack of standing.

### D.   Plaintiff's Third Claim:   Unrecorded Assignments

In his Third Claim for wrongful foreclosure based on
unrecorded assignments, Plaintiff alleges

> MERS' [*sic*] claim in the ADOT to have assigned the
> promissory note together with the DOT, when MERS
> has no legal right, title, possession or interest
> in promissory notes held by its members, without
> more, effectively creates a DOT that is severed
> from the promissory note and converts the DOT into
> a document unrelated to the debt, precluding
> non-judicial foreclosure under Oregon law.   In
> plain terms, the DOT is now disconnected from the
> note and cannot serve to enforce it.
>
> * * *
>
> Additionally, there is no assignment of any kind
> to FANNIE MAE despite the fact that FANNIE MAE
> asserts that it is the true owner of the mortgage.
> FANNIE MAE's assertions of ownership are evidence

of unrecorded assignments that preclude the use of
a non-judicial foreclosure process pursuant to ORS
86. 735(1)

At an absolute minimum, there is at least one
unrecorded assignment of the Trust Deed because
there is no recorded assignment from the initial
beneficiary (the Original Lender) to any other
party despite the fact that MERS, BOA and FANNIE
MAE have all claimed to be the holders of the
beneficial interest.

If the Original Lender assigned its interest to
MERS, BOA, RECON, FANNIE MAE or any other party
via an unrecorded assignment, then Defendants have
failed to comply with ORS 86.735(1) and
foreclosure is invalid.

If the Original Lender assigned its interest to
BAC via an unrecorded assignment, then Defendants
have failed to comply with ORS 86. 735(1) and
foreclosure is invalid.

Compl. at ¶¶ 33-37.

The Court already has addressed and rejected
Plaintiff's argument that assignment to MERS was improper and
served to split the Trust Deed and Note.  For the same reasons,
the Court grants Defendant's Motion to Dismiss as to that portion
of Plaintiff's Third Claim for wrongful foreclosure in which
Plaintiff alleges foreclosure was improper because MERS was not a
proper beneficiary, which purportedly resulted in an improper
split of the Note and Trust Deed.

Plaintiff also contends the foreclosure is invalid
because there is at least one unrecorded assignment of the Trust
Deed as indicated by the fact that there is not any recorded
assignment from the original lender to any other party and/or not

18 - OPINION AND ORDER

any assignment of the Note to Fannie Mae.[4]  Magistrate Judge
Janice M. Stewart recently addressed similar issues in *James v.
Recontrust Company.*  In *James* the plaintiffs obtained a mortgage
from Northwest Mortgage Group (NWMG) and signed a promissory note
in favor of NWMG secured by a Trust Deed that named MERS as
beneficiary of "Lender and Lender's successors and assigns" and
Fidelity National Title Company as Trustee.  No. 11-CV-324-ST,
2011 WL 3841558, at *2 (D. Or. Aug. 26, 2011).  The plaintiffs
became delinquent on their mortgage, and MERS, as beneficiary of
the Trust Deed, assigned the Trust Deed to Bank of America Home
Loan Servicing (BOA).  BOA appointed ReconTrust as successor
trustee.  *Id.*, at *2.  ReconTrust then executed a Notice of
Default and Election to Sell the plaintiff's property.  The note
was transferred to Fannie Mae, but the transfer was not recorded.
In addition, the plaintiff alleged the assignments of the Trust
Deed to BOA and Fannie Mae were never recorded.  *Id.*  The
plaintiffs filed an action in federal court in which they
alleged, among other things, that each time the note was
transferred, the Trust Deed also was required to be transferred
and recorded pursuant to Oregon Revised Statute § 86.735(1).
According to the plaintiffs, the Trust Deed was void because it
was transferred (with the note) without being recorded in

---

    [4] Plaintiff relies on information from Fannie Mae's Loan
Lookup website to establish that Fannie Mae is the owner of the
Note at issue.  Notice of Removal, Ex. A at 60.

19 - OPINION AND ORDER

violation of Oregon Revised Statute §§ 86.0735 and 86.060.

Magistrate Judge Stewart disagreed:

> The legal concept that the "trust deed follows the note," or is incident to the debt, was developed over time to protect the assignee of a secured note when an assignment of the trust deed is not recorded. In *Bamberger v. Geiser*, 24 Or 203, 207, 33 P 609, 610 (1893), a note was assigned, along with the mortgage securing the note, but the assignment of the mortgage was not recorded. The court held that "the assignment of the note carried the mortgage," such that the assignee of the note was subject to the mortgage.
>
> * * *
>
> That concept is embodied in Oregon law. ORS 86.110(1) ("a promissory note secured by a mortgage on real property [can be] transferred by indorsement without a formal assignment of the mortgage"). Since the trust deed follows the note, whoever holds the note by transfer also has the power to foreclose the trust deed, even without recording an assignment of the mortgage. *Barringer v. Loder*, 47 Or 223, 227-29, 81 P 778, 780 (1905).
>
> Simply put, the security interest embodied in the trust deed follows any transfer of the note in favor of the lender and its successors, such that the trust deed does not become split or separated from the note. However, plaintiffs seek to use this legal fiction to defeat its very purpose by depriving the note holder of the full benefit of its security instrument and the right to foreclose by advertisement and sale. The court can find no authority to support plaintiffs' novel theory.
>
> Nothing in Oregon law requires recording of each assignment of the trust deed when the underlying note is transferred. The only recording requirement is found in ORS 86.735(1) for all "assignments of the trust deed by the trustee or the beneficiary" before a non judicial foreclosure by advertisement and sale. However, this statute by its express terms only requires the recording

of assignments by the parties who have a recorded interest in the real property providing security, that is, "the trustee or the beneficiary."

Plaintiffs do not allege that either the Trustee (Fidelity National) or the Beneficiary (MERS) made any assignment of the Deed of Trust prior to the assignment by MERS to [BOA].  Until that point in time, MERS remained the Beneficiary to act for the Lender (NWNG) and its successors and assigns, even if the note was sold to an assignee or acquired by a successor.  By recording the assignment of the Deed of Trust from MERS to [BOA], [BOA] then acquired the power to act as the Beneficiary, rendering valid its subsequent appointment of RTC as the successor trustee.

Although a transfer or assignment of the note transfers the security interest for the protection of the beneficiary, it is not the same act as "an assignment of the trust deed by the trustee or the beneficiary" contemplated by ORS 86.735(1).  That statute makes no mention of recording a transfer of the promissory note, opposed to the deed of trust.  A promissory note is not a conveyance of real property and is not recorded or even susceptible to recordation.  ORS 93.610, 93.630, 205.130.  Recording interests in a promissory note would not serve the purpose of the recording statutes because the promissory note does not contain a description of the property, does not transfer title to real property, and does not affect title.

*Id.* at *10-11.  The plaintiff (James) also alleged "after

acquiring the loan from NWNG, [BOA] then securitized it by

transferring it to Fannie Mae."  Magistrate Judge Stewart,

however, concluded "any such assignment of the Deed of Trust by

[BOA], if it occurred, was not by either the Beneficiary (MERS)

or the Trustee (Fidelity National) and did not need to be

recorded prior to a nonjudicial foreclosure under ORS 86.735(1)."

21 - OPINION AND ORDER

*Id.*, at *11 n.4.

The Court finds Magistrate Judge Stewart's reasoning is persuasive.  Here, as in *James*, Plaintiff does not allege either Trustee Fidelity National or MERS made any assignment of the Trust Deed prior to the assignment to BOA.  Accordingly, MERS remained the Beneficiary with the power to act for the Lender and its successors and assigns until the transfer to BOA even if the note was sold to an assignee or acquired by a successor.  By recording the assignment of the Trust Deed from MERS to BOA, BOA acquired the power to act as the Beneficiary and rendered valid its subsequent appointment of ReconTrust as the successor trustee.

The Court, therefore, concludes Defendants' alleged failure to record all alleged transfers of the Trust Deed and/or the Note does not render the Trust Deed invalid.  Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiff's Third Claim for wrongful foreclosure based on unrecorded assignments.

### E.   Plaintiff's Fourth Claim:  Invalid Successor Trustee

In his Fourth Claim for wrongful foreclosure based on invalid successor trustee, Plaintiff asserts ReconTrust is not a valid Trustee because MERS lacked authority to appoint ReconTrust.

Plaintiff's assertion derives from Plaintiff's earlier, unsuccessful argument that MERS was not a valid beneficiary

22 - OPINION AND ORDER

because it lacked the authority to validly appoint ReconTrust as Trustee.[5]  The Court already has concluded MERS was a valid trustee, transfers by MERS were valid, and BOA's appointment of ReconTrust as successor trustee was properly recorded.  The Court, therefore, also concludes ReconTrust was a valid trustee with the power to commence foreclosure.

Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiff's Fourth Claim for wrongful foreclosure based on ReconTrust being an invalid successor trustee.

### F.   Plaintiff's Fifth Claim:  Defective Notice of Default and Election to Sell

In his Fifth Claim for wrongful foreclosure based on defective notice of default and election to sell, Plaintiff alleges the November 10, 2010, Notice of Default is facially incorrect because the May 28, 2010, Rescission of Notice of Default provided Plaintiff's default had been "removed, paid and overcome so that said Trust Deed should be reinstated." According to Plaintiff, therefore, his default that occurred before May 28, 2010, was cured, and he no longer owed any portion of the default that accrued before May 28, 2010.

In the alternative, Plaintiff alleges the November 10, 2010, Notice of Default was defective because it failed to comply

---

[5] Defendants note MERS did not appoint ReconTrust as Trustee, but instead MERS transferred all beneficial interest in the Trust Deed to BOA, who, in turn, appointed ReconTrust as Trustee.

with the following requirements of Oregon Revised Statute
§ 86.745(9)(a)-(d)[6]:

    a.    include any contact information for the
        Oregon State Bar or free legal help. ORS
        86.745(9)(a);

    b.    include any information regarding the
        borrower's right to notice pursuant to ORS
        86.755(5) or information stating that the
        borrower may have additional rights under
        Federal law.  ORS 86.745(9)(b);

    c.    contain any text that is substantially in the
        required statutory form or content that
        relates to "Notice to Tenants" that is set
        apart from other text in the Notice of Sale.
        ORS 86.745(9)(c)-(d).

Notice of Removal, Ex. A at 19.

      **1.**    **Rescission of Notice of Default.**

      Plaintiff alleges the Rescission of Notice of
Default acted to waive or to forgive his default through May 28,
2010, because the Rescission provides in pertinent part:

        A notice of grantor's default under said Trust
        Deed . . . was recorded on 01/13/2010 . . .:
        thereafter by reason of the default being cured as
        permitted by the provision of Section 86.753,
        Oregon Revised Statutes, the default described in
        said notice of default has been removed, paid and
        overcome so that said Trust Deed should be
        reinstated.

Notice of Removal, Ex. A at 54.

---

    [6] Plaintiff contends in his Complaint that the Notice of
Default did not comply with a number of requirements in Oregon
Revised Statute "§ 86.745(a)-(d)."  The Court, therefore, assumes
Plaintiff intends to assert the Notice of Default did not comply
with § 86.745(9)(a)-(d).  Accordingly, the Court evaluates the
Notice of Default under § 86.745(9)(a)-(d).

24 – OPINION AND ORDER

To support their assertion that Plaintiff's default was not cured and Defendants did not waive any part of Plaintiff's default, Defendants point to the language immediately following the paragraph relied on by Plaintiff:

> Now therefore, notice is hereby given that the undersigned Trustee does hereby rescind, cancel, and withdraw said notice of default and election to sell; said Trust Deed and all obligations secured thereby hereby are reinstated and shall be and remain in force and effect the same as if no acceleration had occurred and as if said notice of default had not been given; *it being understood, however, that this rescission shall not be construed as waiving or affecting any breach or default (past, present or future) under said Trust Deed or as impairing any right or remedy thereunder*, or as modifying or altering in any respect of the terms, covenants, conditions or obligations thereof, but is and shall be deemed to be only an election without prejudice, not to cause a Sale to be made pursuant to said notice so recorded.

Notice of Removal, Ex. A at 54 (emphasis added).  Defendant notes Oregon Revised Statute § 96.735(4) requires past actions against a debtor to collect under a Trust Deed must be dismissed before a foreclosure sale takes place.  According to Defendant, therefore, when a Notice of Default is recorded to initiate foreclosure proceedings but a sale does not ultimately take place, "it is common practice to record a rescission or other evidence that the prior foreclosure proceedings have been halted," which is what occurred here.  In addition, Defendants point out that the Trust Deed provides: "Any forbearance by Lender in exercising any right or remedy . . . shall not be a waiver of or preclude the

25 - OPINION AND ORDER

exercise of any right or remedy." Notice of Removal, Ex. A at 44. Finally, Defendant notes Plaintiff does not and cannot allege he made any payments in an attempt to cure his default or that he actually cured his default.

The language of the Rescission taken as a whole and in combination with the Trust Deed make clear that the Rescission of Notice of Default did not act as a waiver of Plaintiff's mortgage obligation or his default. Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiff's Fifth Claim to the extent that Plaintiff alleges the Rescission of Notice of Default acted to waive or to cure his default.

### 2. Compliance with Oregon Revised Statute § 86.745(9)(a)-(d).

In the alternative, Plaintiff alleges the Notice of Default fails to comply with the requirements of Oregon Revised Statute § 86.745(9)(a)-(d).

Oregon Revised Statute § 86.745(9) provides:

> If the property includes one or more dwelling units that are subject to ORS chapter 90, [the notice of sale shall] include a notice addressed clearly to any individual who occupies the property and who is or might be a residential tenant. The notice required under this subsection must [include various items].

Chapter 90 of the Oregon Statutes is the Residential Landlord and Tenant Act and relates to various requirements of rental and landlord-owned properties. Or. Rev. Stat § 90.105. Plaintiff has not alleged the property at issue is subject to Chapter 90.

26 – OPINION AND ORDER

Accordingly, Plaintiff has not stated a claim with respect to his allegations that the Notice of Default failed to comply with Oregon Revised Statute § 86.745(9)(a)-(d).

In addition, Defendants note § 86.745(9) relates only to notices of sale rather than notices of default. Defendants' Notice of Default, therefore, was not required to comply with the provisions of § 86.745(9).

Finally, Plaintiff does not address Defendants' assertions in his Response to Defendants' Motion to Dismiss. It appears, therefore, that Plaintiff concedes Defendants' arguments. Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiff's Fifth Claim for wrongful foreclosure based on defective notice of default and election to sell.

### G.    Plaintiff's Sixth Claim:  Failure of Consideration

In his Sixth Claim for wrongful foreclosure based on failure of consideration, Plaintiff alleges MERS "fails as a party to the contract . . . because MERS supplied no consideration of any kind to receive the beneficial interest alleged." Notice of Removal, Ex. A at 20.

Magistrate Judge Stewart also rejected this argument in *James*:

> Plaintiffs allege that the assignment of the Deed of Trust from MERS to [BOA] if void for lack of valuable consideration. Amended Complaint, ¶ 33. The lack of consideration may be a defense available to MERS, but is not a basis for

plaintiffs, as third parties, to void the
transfer.

*James*, 2011 WL 3841558, at *13.  This Court agrees.

Accordingly, the Court grants Defendants' Motion
to Dismiss Plaintiff's Sixth Claim for wrongful foreclosure based
on failure of consideration.

### H.    Plaintiff's Seventh Claim:   Lack of Standing

In his Seventh Claim for wrongful foreclosure based on
lack of standing, Plaintiff alleges foreclosure proceedings were
improper because Defendants did not record an assignment of the
Note from Mortgage Express, LLC, to Fannie Mae.  The Court
already has concluded there is not any Oregon law that requires
the recording of each assignment of the Trust Deed when the
underlying note is transferred and the Trust Deed itself provides
"[t]he Note or partial interest in the Note (together with this
[Trust Deed]) can be sold one or more times without prior notice
to the Borrower."  The Court, therefore, also concludes the
foreclosure proceedings were not improper based on the fact that
Defendants did not record an assignment of the Note to Fannie
Mae.

Accordingly, the Court grants Defendants' Motion to
Dismiss Plaintiff's Seventh Claim for wrongful foreclosure based
on lack of standing by Fannie Mae.

## II.  Fraud

In Plaintiff's Ninth Claim[7] for fraud and/or intentional misrepresentation, Plaintiff alleges BOA misrepresented to him that he would receive a trial workout plan on his mortgage loan and a permanent modification of that loan.  Defendants assert Plaintiff has not pled his fraud claim with sufficient particularity.  For the reasons that follow, the Court agrees.

### A.  Standards

Federal Rule of Civil Procedure 8(a) generally provides a pleading that sets forth a claim must contain "a short and plain statement of the claim showing the pleader is entitled to relief."  Federal Rule of Civil Procedure 9(b), however, requires all allegations of fraud to be stated "with particularity."  In order to satisfy the additional burdens imposed by Rule 9(b), the plaintiff must allege, at a minimum, "the time, place and nature of the alleged fraudulent activities." *Tok Cha Kim v. CB Richard Ellis Haw., Inc.*, 288 F. App'x 312, 315 (9th Cir. 2008)(citing *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)).[8]

---

[7] Plaintiff's Complaint does not include an Eighth Claim.

[8] "It is well-settled that the Federal Rules of Civil Procedure apply in federal court, irrespective of the source of the subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal.  While a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be

"Rule 9(b) demands that the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns*, 567 F.3d at 1124 (quoting *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "'Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). "A party alleging fraud must set forth more than the neutral facts necessary to identify the transaction." *Id.* (quotation omitted).

**B.    Analysis**

To establish a claim for fraud under Oregon law, a party must prove the following elements:

> "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) [the speaker's] intent that it should be acted on by the person and in the matter reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) [the hearer's] reliance on its truth; (8) [the hearer's] right to rely thereon; (9) and [the hearer's] consequent and proximate injury."

*Merten v. Portland Gen. Elec. Co.*, 234 Or. App. 407, 416 (2010)(quoting *Wieber v. FedEx Ground Package Sys., Inc.*, 231 Or. App. 469, 480 (2009)). In his claim for fraud, Plaintiff

---

stated with particularity is a federally imposed rule." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)(quotation omitted).

alleges:

79. BOA promises, on its website, in form letters, and in its interactions with Plaintiff that it will answer loan modification requests within a specific time frame, typically 30 to 60 days.

80. BOA claims that the loan modification process will typically take 30 to 45 calendar days from receipt of a consumer's documents to make a decision on a loan modification request.

81. BOA customer service agents reinforced these claims and promises in conversations with Plaintiff.

82. Despite its representations to Plaintiff, BOA failed to respond in a timely fashion, causing Plaintiff delay, anxiety and ultimately leading to foreclosure all while simply trying to secure an affordable payment that allows Plaintiff to meet its obligations and keep its home.

83. In addition to its fraudulent misrepresentations, BOA repeatedly and routinely "lost" Plaintiffs documents, causing further delays, and requiring Plaintiff to repeatedly resubmit the exact same document. Plaintiff believes and alleges that BOA intentionally "misplaces" critical consumer documentation to deceptively deny modifications because of "missing" paperwork that BOA has already received.

84. BOA routinely failed to notify Plaintiff of any missing documentation until after the 30 day window in which documents would be accepted were submitted, requiring Plaintiff, upon learning of the apparently missing documents by virtue of repeated requests for information, to repeatedly resubmit the exact same documents.

85. BOA repeatedly informed Plaintiff that documents were missing or absent after assuring Plaintiff that all documents had been received and that Plaintiff's file was under review.

86. Plaintiff repeatedly and regularly called BOA

to check on the status of Plaintiff's modification request.

87.  BOA responded to Plaintiff's requests for information by promising calls, letters and updates that were never forthcoming.

88.  Rather than the expected status updates, BOA instead repeatedly only sent foreclosure related communications and collection calls.

89.  BOA knew or at the very least should have known that its statements in oral, written and electronic communications were blatantly false and that consumers like Plaintiff suffer delays of months while waiting for action on their modification requests  that was not ever forthcoming.

90.  BOA made unequivocal promises that successful completion of a trial plan would result in a permanent modification.

91.  BOA intentionally and knowingly led Plaintiff to believe that it would convert Plaintiff to a permanent modification after three or four months on a trial period.  Despite complying with BOA and performing all conditions precedent, Plaintiff was dropped from the Loan Modification program and informed that the house was to be sold at auction.

92.  BOA knew or should have known that its promise to make decisions on permanent modification within a month of completing their trial modifications was deceptive.

93.  BOA tracked the "age" of trial periods, and knew that many consumers waited more than four, or even six or nine or twelve months for their modification to be made permanent (or more often declined).

94.  Plaintiff was actually damaged more by the trial modification period that [sic] he would have been if Plaintiff had never entered the trial modification.

95.  This finding is congruent with the report of

32 – OPINION AND ORDER

the Inspector General of the Troubled Assets
Relief Program, which oversees HAMP, who stated
that borrowers in failed trial modification who
"even in circumstances where they never missed a
payment . . . may face back payments, penalties
and even late fees that suddenly become due on
their 'modified' mortgages and that they are
unable to pay, thus resulting in the very loss of
their homes that HAMP is meant to prevent."

96.   In addition to the foregoing BOA reinforces
deceptive promises by promising to homeowners like
Plaintiff that their homes will not be sold while
they are awaiting decisions on their modification
request or on modification plans.

* * *

97.   Despite these assurances Defendants initiated
foreclosure against Plaintiff.

98.   BOA knew or should have known that its
statements were false and misleading.   BOA and its
employees knew or should have known that tens of
thousands of homes were wrongfully foreclosed
while modifications were still under review.

99.   BOA represents publicly, and federal rules,
require that consumers need not be delinquent to
be eligible for a modification.

100. BOA representatives, however, repeatedly
advised Plaintiff that he must miss payments as a
precondition to the considered for a loan
modification.

101. BOA's representation was false.

102. BOA's representation was intended to induce
default.

103. BOA's representation in fact induced default.

104. Plaintiff was reasonable in relying on BOA.

105. Plaintiff's reasonable reliance was
detrimental to Plaintiff.

106. BOA in essence, manufactured the very default that it now seeks to utilize for the purpose of conducting a non-judicial foreclosure and obtaining title to Plaintiffs home.

* * *

109. As a result, Plaintiff has incurred direct damages from Defendants' intentional misrepresentations and fraud in an amount of $49,999.00 or in an amount proven at trial.

Notice of Removal, Ex. A at 22-26.

Defendants assert Plaintiff's claim does not meet the heightened pleading standards of Rule 9(b) because Plaintiff fails to allege any specific promise made to him by anyone authorized to speak on behalf of BOA. Defendants point out that Plaintiff fails to include any specific information as to when or in what manner he requested a loan modification, the terms on which BOA allegedly offered him a temporary modification, or the terms on which BOA advised him it would grant permanent loan modifications. In addition, although Plaintiff alleges BOA reinforced "deceptive promises by promising to homeowners like Plaintiff that their homes will not be sold while they are awaiting decisions on their modification request or on modification plans," Plaintiff does not allege BOA actually made any such promise to Plaintiff. Finally, Plaintiff does not set out a factual basis for his claim of damages stemming from fraud in the amount of $49,999. The Court, therefore, concludes Plaintiff has not pled his claim for fraud with sufficient

34 - OPINION AND ORDER

particularity.

Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiff's claim for fraud.

## III. Intentional Infliction of Emotional Distress

Plaintiff brings his Tenth Claim for intentional infliction of emotional distress (IIED).

### A. Standards

To state a claim for IIED, Plaintiff must show Defendants intended to inflict severe emotional distress, Defendants' acts were the cause of Plaintiff's severe emotional distress, and Defendants' acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. *Babick v. Or. Arena Corp.*, 333 Or. 401, 411 (2002). "Whether conduct constitutes an extraordinary transgression of the bounds of socially tolerable conduct is a question of law." *Harris v. Pameco Corp.*, 170 Or. App. 164, 171 (2000). "Conduct that is rude, boorish, tyrannical, churlish and mean" does not support liability for IIED." *Schoen v. Freightliner LLC*, 224 Or. App. 613, 627 (2008)(quotation omitted).

> The most important factor is whether a special relationship exists between a plaintiff and a defendant. . . . A defendant's relationship to the plaintiff may be one that imposes on the defendant a greater obligation to refrain from subjecting the victim to abuse, fright, or shock than would be true in arm's-length encounters among strangers.

*Id.* (quotation omitted).

35 - OPINION AND ORDER

**B.   Analysis**

Defendants assert Plaintiff does not state a claim for IIED because Defendants' acts, as a matter of law, do not constitute an extraordinary transgression of the bounds of socially tolerable conduct, particularly in light of the fact that the parties' interactions occurred in the context of an arm's-length commercial transaction.   The Court agrees.

Although the Court acknowledges the alleged events were no doubt stressful for Plaintiff, Defendants' alleged conduct was not the type of extraordinarily outrageous conduct required to state a claim for IIED under Oregon law.   Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiff's Tenth Claim for IIED.

**IV.   Plaintiff's Eleventh Claim for Injunctive Relief**

Plaintiff seeks injunctive relief in his Eleventh Claim; specifically, an order allowing Plaintiff to bring an action to quiet title "at any time" and permanently enjoining Defendants from (1) "further attempts to transfer interests in the subject Property, Note, or DOT" and (2) "any further attempts . . . [to] initiat[e] non-judicial foreclosure . . . [and] relegate Defendants to use of judicial foreclosure action to foreclose any alleged breach or payment default."   Notice of Removal, Ex. A at 30-31.

Plaintiff alleges in his Complaint that:

36 – OPINION AND ORDER

123. Plaintiff has a clear legal right to seek
. . . permanent injunctive relief as Plaintiff
owns the Property and as Defendants are seeking,
without satisfying the necessary legal notice or
standing requirements and without any evidence
that they own the full and unencumbered interest
in either the Note or the DOT, and are not
entitled to take possession, custody or control of
the Property.

* * *

125. As Defendants have failed ownership interests
in either the Note or the DOT none of the
Defendants possess legal standing to lawfully
foreclose on Plaintiffs Property and as a result,
no Defendants have any have a valid claim for
possession.

* * *

128. As the Defendants will be acting in clear
violation of the requirements of ORS 86.735(1),
ORS 86.790(3) and fail to meet the statutory
definition of a beneficiary under ORS 86.705(1),
Plaintiffs can readily sustain their burden of
proof in any temporary or permanent injunction
hearing.

Notice of Removal, Ex. A at 29-30.  Because the Court has

concluded Plaintiff has not and cannot state a claim for wrongful

foreclosure for the reasons on which Plaintiff relies in his

claim for injunctive relief, the Court also concludes Plaintiff

has not stated a claim for injunctive relief.

Accordingly, the Court grants Defendants' Motion to Dismiss

as to Plaintiff's Eleventh Claim for injunctive relief.

## V.   Plaintiff's Twelfth Claim for Declaratory Relief

In his Twelfth Claim Plaintiff seeks a declaration pursuant

to Oregon Revised Statute § 28.010 that

37 - OPINION AND ORDER

Defendants have no legal or equitable rights in the Note or the DOT for purposes of conducting a foreclosure. The absence of Defendants' legal standing to institute, maintain, enforce a foreclosure on the Property, and thereby [*sic*] entitles Plaintiff to seek permanent injunctive relief barring Defendants seeking to foreclose on the Property in the future.

Notice of Removal, Ex. A at 31. Plaintiff seeks the following declaratory relief:

139. In view of the fact that:

a.   The original Note was not executed in favor of any of the Defendants; and

b.   The Defendants are seeking to foreclose on the Plaintiffs residential real property without any demonstrated interest in either the Note or the DOT; and

c.   There is a serious question whether the purported assignment by Defendant MERS to Defendant BOA and whether the original lender's interest in the DOT and Note was valid or lawful;

d.   There is a serious question whether the appointment of successor trustee properly appointed Defendant RECON as successor trustee;

e.   There is a serious question whether the Notice of Default and Election to Sell is valid due to manifest accounting errors in the sums allegedly due and owing;

f.   There is a serious question whether the Defendants have recorded all assignments of the DOT as required by ORS 86.735(1);

g.   There is a serious question as to the validity of MERS as a beneficiary;

38 - OPINION AND ORDER

       h.    There are serious questions as to what, if any, consideration MERS paid for its purported beneficial interest;

       I.    There is a serious question as to whether Plaintiff is in default to any of the parties conducting the non-judicial foreclosure.

Notice of Removal, Ex. A at 33. Because the Court already has concluded Plaintiff has not and cannot establish a claim for wrongful foreclosure on the basis of the allegations Plaintiff seeks to rely on in his claim for declaratory relief, the Court also concludes Plaintiff has not stated a claim for declaratory relief.

Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiff's Twelfth Claim for declaratory relief.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion (#5) to Dismiss.

Because Plaintiff has not stated a claim for wrongful foreclosure and cannot amend his Complaint to state a claim for wrongful foreclosure under any of the theories espoused by Plaintiff, the Court **DISMISSES with prejudice** Plaintiff's First through Seventh Claims for wrongful foreclosure.

The Court also **DISMISSES with prejudice** Plaintiff's Eleventh and Twelfth Claims for injunctive and declaratory relief to the extent those Claims are based on Plaintiff's wrongful-foreclosure

39 - OPINION AND ORDER

Claims.

Because Plaintiff may be able to plead facts sufficient to state claims for fraud and/or IIED, the Court **DISMISSES without prejudice** Plaintiff's Ninth Claim for fraud and Tenth Claim for IIED.

The Court **GRANTS** Plaintiff leave to amend his Complaint no later than **March 20, 2012,** for the purpose of curing the deficiencies set out in this Opinion and Order limited to Plaintiff's Ninth Claim for fraud and Tenth Claim for IIED.

IT IS SO ORDERED.

DATED this 28th day of February, 2012.


_____
ANNA J. BROWN
United States District Judge

40 - OPINION AND ORDER